# T. S. REED GROCERY CO. v. MILLER.

No. 2161. Opinion Filed November 19, 1912.

(128 Pac. 271.)

1. **EVIDENCE—Similar Facts—Sales.** On an issue of the condition of hominy, prepared and canned in Oklahoma City, sold from sample, for delivery at Beaumont, Tex., evidence that the seller afterwards sold hominy, put up by the same canning company, to other local patrons in Oklahoma City, without complaint, was improperly admitted; and where the only testimony of the condition of the hominy, apart from that of the vendee, which showed it to be worthless, was of the character first named, it was error for the court to refuse to instruct a verdict for the plaintiff, in an action to recover for freight paid on defendant's account.

2. **APPEAL AND ERROR—Review—Inferences from Facts Proven.** Inferences of fact are to be deduced by the jury whenever there is evidence from which an existence of facts sufficient to support a verdict may be inferred. But a verdict which is altogether unsupported by evidence, or against the uncontradicted evidence and every legitimate inference deducible therefrom, will not be upheld.

3. **TRIAL—Taking Case from Jury—Direction of Verdict.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.

(Syllabus by Sharp, C.)

*Error from Oklahoma County Court;*
*Sam Hooker, Judge.*

Action by the T. S. Reed Grocery Company against the Lion Store Mercantile Company. From a judgment for defendant on its cross-petition, plaintiff brings error. Eugene Miller, trustee in bankruptcy of the Lion Store Mercantile Company, is substituted as defendant in error. Reversed and rendered.

*S. A. Horton,* for plaintiff in error.

*J. F. Bledsoe,* for defendant in error.

Opinion by SHARP, C.   At the conclusion of the testimony, plaintiff demurred to the evidence of the defendant, which demurrer was overruled, and exceptions saved.   Thereupon plaintiff asked the trial court for a peremptory instruction, directing the jury to return a verdict in its behalf for $156 and interest, being the amount sought to be recovered by plaintiff in its first cause of action.   This request was overruled, and exceptions saved, and constitutes the only error urged in this court.   The jury returned a verdict in favor of defendant, and against the plaintiff, in the sum of $444, being the full amount of its counterclaim.

The controversy arose over the sale by defendant and the purchase by plaintiff of a car load of hominy, to be delivered at Beaumont, Tex.   Upon arrival of the car plaintiff paid the freight thereon, amounting to $156, leaving a balance due defendant on the sale price of $444.   Shortly after the arrival of the shipment at Beaumont, it was discovered that a large portion of the cans containing the hominy were rusted, and, by agreement of the local sales agent at Beaumont, these defective cans were relacquered, and the bill therefor amounting to $78.50 was afterwards paid by the defendant.   Later it was further discovered, according to the contention of the plaintiff, that the hominy contained in the cans was unfit for use and worthless.   Plaintiff was engaged in the wholesale grocery business, and had made sales of a large portion of the car load shipment, much if not all of which was afterwards returned to it as worthless.   An examination of a very considerable portion of the hominy was then made, and all thus examined was found to be unfit for use and of no value, according to the testimony of plaintiff's witnesses.   Defendant was notified of the condition and quality of the goods, and plaintiff tendered back to defendant at Beaumont the stock on hand.   Plaintiff's witnesses each testified positively that from an examination of the hominy received at Beaumont, and covered by defendant's shipment, it was utterly unfit for use and without value.   There was no competent testimony offered to the contrary.   The sale was made from samples sent plaintiff by defendant.   These samples were standard stock, and the contract of purchase called for hominy of a standard quality.   There was

no testimony offered by defendant that showed, or by fair inference tended to show, that the goods shipped were of like quality to the samples. It was shown by the witness Gallot that both samples were taken from stock in defendant's store, and that he did not know the condition of the hominy that was packed in the car, or its condition when it reached Beaumont. Mr. Gardner tetsified that, at the time of the transaction, defendant company had on hand a considerable amount of the hominy, put up by the Oklahoma Canning Company during the season of 1907; that the samples of hominy were selected out of the stock in the store, two different sets being shipped to its Beaumont agent, Oelrichs. About four days after the·shipment of the last samples, the witness was advised that Oelrichs had made a sale to the plaintiff and instructed Mr. Lawrence, in defendant's employ, to go out to the Oklahoma Canning Company's plant and look at its stock of hominy, and, if all right, to take it. . This, defendant afterwards did, and instructed the canning company to ship 500· cases to the plaintiff at Beaumont, and to deliver the balance at defendant's store in Oklahoma City, which was accordingly done. Over objection, the witness was permitted to testify that of the goods sold at the store he had had no unusual complaint· from his patrons. The witness Saunders testified that he was employed by defendant company, and that said defendant handled the O. K. · brand of hominy, bought from a packing plant in Oklahoma City, and that said defendant had used from 200 to 400 cases of said hominy, and was present at the conversation between Mr. Gardner and Mr. Gallot with reference to the shipment of samples from stock, and that witness himself selected the samples on both occasions. Witness did· not oversee the packing or loading of the shipment, and saw none of the goods except what was at the store, though the same brand was sold there and no unusual complaint was made of it. L. P. Laurence testified that he was in the employ of defendant company; that said company handled the O. K. brand of hominy, but did not know what kind of hominy it was or its condition, though it looked like it was in good shape; that he went to a packing plant in Oklahoma City and investigated its hominy on hand with a view of purchasing it,

but that he looked only at the cans, and did not examine the stock; that it looked just like that handled by defendant company at its store; that he neither helped pack or ship the car load lot consigned to plaintiff, and did not know who attended to it. Witness Gardner, being recalled, testified that defendant company bought the hominy after Laurence's inspection, a part of which was shiped to plaintiff, but that he was not present when the car was being loaded and knew nothing of the shipment other than the receipt of the bill. This, together with certain correspondence that passed between the parties, is in substance the defendant's evidence. Not one witness who testified for defendant knew of the condition of the hominy. The only inspection testified to was that of the condition of the cans. Obviously this was no inspection of the stock. Plaintiff bought goods of a quality contained in the samples shipped from defendant's store. The uncontradicted testimony of plaintiff shows that it received a worthless consignment, shipped from the Oklahoma Canning Company's plant in Oklahoma City, purchased by defendant after its sale to plaintiff. It was not even shown that the stock or quality from which the samples were selected, and the shipment afterwards made, were the same, or that the hominy was canned during the same season, or that the process of manufacture was similar or identical; in fact, we are asked to infer from the vague, indefinite, and incompetent evidence of the defendant that the goods shipped were of the same stock, kind, quality, and age, as the samples from defendant's store.

While the court may direct a verdict only where the evidence is undisputed or is of such conclusive character that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict in opposition to it, we believe, and so hold, that the present case is one in which the verdict should have been instructed for plaintiff. *Moore v. First Nat. Bank of Iowa City*, 30 Okla. 623, 121 Pac. 626; *Neeley v. Southwestern Cotton Oil Co.*, 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145. Here the evidence of the plaintiff as to the kind and quality of the hominy received by it is undisputed. Admitting that defendant sold to plaintiff a standard quality of lye hominy (and the fact stands

undisputed), and conceding the truth of all the evidence offered by the defendant, with such inferences and conclusions as may reasonably be drawn therefrom, there was no competent evidence warranting a verdict in its behalf. The fact that the local customers of defendant company made no complaint about hominy sold them by defendant, made by the Oklahoma Canning Company, is no evidence of the kind or quality of hominy shipped plaintiff. This testimony was wholly irrelevant, and should not have been admitted. It did not tend to throw any light upon the issue as to the quailty of the hominy involved in the present controversy, at the time of its delivery to the plaintiff, and it should have been excluded. It was of a highly prejudicial nature. *Bloom's Son Co. et al. v. Haas,* 130 Mo. App. 122, 108 S. W. 1078; *Cook et al. v. Sheehan et al.,* 16 S. D. 92, 91 N. W. 452. Manifestly from a careful reading of the evidence, it was upon this testimony that the jury based its verdict. In fact, it was the only testimony upon which a verdict could possibly have been returned for the defendant. Testimony of this character, having been admitted, will not be held to be sufficient to give rise to an inference or conclusion that the witnesses for the plaintiff testified falsely. Inferences of fact are to be deducted by the jury whenever there is evidence from which an existence of facts sufficient to support a verdict may be inferred. But a verdict, which is altogether unsupported by evidence, or against the uncontradicted evidence and every legitimate inference deducible therefrom, will not be upheld. In our opinion the verdict of the jury was palpably wrong, and was altogether unsupported by the evidence. Not alone this, but there were no legitimate inferences, deducible from the testimony, sufficient to support it.

We therefore conclude that the trial court erred in not directing a verdict for the plaintiff, and that the judgment of the trial court should be reversed, and judgment entered for the plaintiff for the sum of $156 and interest at 6 per cent. per annum from the 14th day of July, 1908.

By the Court: It is so ordered.